UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| Titan Wheel Corporation of Illinois; The Carlstar Group, LLC; Titan Tire Corporation; and Marastar, LLC<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Court No. 26-03890 |

**COMPLAINT**

Titan Wheel Corporation of Illinois; The Carlstar Group, LLC; Titan Tire Corporation; and Marastar, LLC (collectively "Plaintiffs"), by and through their undersigned attorneys, hereby bring this civil action and allege the following:

1. This action seeks refunds of certain *ad valorem* tariffs imposed under the putative authority of the International Emergency Economic Powers Act ("IEEPA") on goods imported by Plaintiffs on or after February 4, 2025.

2. Beginning in February of 2025, through a series of executive orders, the President of the United States invoked IEEPA as authority to impose new and substantial duties on goods imported from many foreign countries, including countries from which Plaintiff has imported merchandise.

3. On February 20, 2026, the United States Supreme Court ruled that "IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump*, *Learning*

*Resources, Inc. v. Trump*, No. 24-1287, slip op. at 20 (U.S. Feb. 20, 2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)).

PARTIES

4. Plaintiff Titan Wheel Corporation is located at 2801 Cherry St, Quincy, IL 62301. Plaintiff The Carlstar Group, LLC is located at 520 JD Yarnell Industrial Parkway, Clinton, TN 37716. Plaintiff Titan Tire is located at 1525 Kautz Road, Suite 600, West Chicago, IL 60185. Plaintiff Marastar LLC is located at 19811 85th Avenue S, Kent, WA 98031. All the Plaintiffs are wholly owned subsidiaries of Titan International, Inc., which is a publicly traded company listed on the New York Stock Exchange under the ticker symbol TWI. Plaintiffs are importers of wheels, tires, components for wheels and tires, tire manufacturing equipment, and similar products, including but not limited to such merchandise imported on or after February 4, 2025. Plaintiffs paid IEEPA tariffs on such imports. Some entries of the merchandise imported by Plaintiffs have become final in accordance with 19 U.S.C. §1514(a).

5. Defendant the United States of America, acting through its agent, United States Customs and Border Protection ("CBP"), received the IEEPA tariffs paid by Plaintiffs. Defendant has not refunded all the IEEPA tariffs paid by Plaintiffs.

STANDING

6. Plaintiffs have standing to bring this lawsuit because they imported goods into the United States from countries subject to the IEEPA tariffs and have paid IEEPA tariffs on such imports to the United States. The IEEPA tariff assessments by Defendant adversely affected and aggrieved Plaintiffs because Plaintiffs did pay unlawfully assessed IEEPA tariffs. Plaintiffs have standing under 5 U.S.C. § 702 to bring this action against the United States because Plaintiffs have been "adversely affected or aggrieved" by agency action.

## JURISDICTION

7. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). See *Learning Resources*, slip op. at 5, n.1.

8. This Court has all the powers at law, in equity, and as conferred by statute as a United States District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief. 28 U.S.C. §§ 2643(a)(1), (c)(1).

## TIMELINESS

9. A plaintiff must commence an action under 28 U.S.C. § 158l(i) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

10. This action has been commenced by the filing of a summons and complaint within two years after February 4, 2025, when Defendant began unlawfully collecting and assessing IEEPA tariffs on Plaintiffs' imported merchandise. Therefore, this action is timely.

## FACTUAL AND LEGAL BACKGROUND

11. On February 1, 2025, President Trump issued three executive orders imposing tariffs on imports from Canada, Mexico, and China (the "Trafficking Tariffs") under the putative authority of the IEEPA statute.

12. The executive order directed at Canada, Executive Order 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025), imposed 25 percent *ad valorem* duties on "[a]ll articles that are products of Canada,", with certain exceptions. The executive order directed at Mexico, Executive Order 14194, 90 Fed. Reg. 9,117, *Imposing Duties To Address the Situation at Our Southern Border* (Feb. 7, 2025), imposed 25 percent *ad valorem* duties on "[a]ll articles that are products of Mexico," with certain

exceptions. The executive order directed at China, Executive Order 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed.Reg. 9,121 (Feb. 1, 2025), imposed 10 percent *ad valorem* duties on "[a]ll articles that are products of China," with certain exceptions. In each of these Executive Orders, the President stated that the circumstances "constitute[d] an unusual and extraordinary threat, which ha[d] its source in substantial part outside the United States, to the national security, foreign policy, and economy of the United States." 90 Fed. Reg. at 9,114, 9,118, 9,122. In imposing these tariffs, the President claimed to be acting under the authority of section 1702(a)(1)(B) of IEEPA and "specifically [found] that action under other authority to impose tariffs [was] inadequate to address this unusual and extraordinary threat." 90 Fed. Reg. at 9,114, 9,118, 9,122.

13. On April 2, 2025, President Trump issued an executive order imposing 10 percent *ad valorem* duties on imports from most countries, with additional *ad valorem* duties ranging from 11 percent to as high as 50 percent to be imposed on a country-by-country basis (the "Reciprocal Tariffs" and, together with the Trafficking Tariffs, the "IEEPA Tariffs"). Executive Order 14257, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025).

14. On April 9, 2025, the President suspended the imposition of the additional country-specific Reciprocal Tariffs for all countries except China until July 9, 2025. Executive Order 14266, *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg 15,625 (Apr. 9, 2025) ("Executive Order 14266").

15. The President repeatedly amended the China-specific Reciprocal Tariff rate in response to China's adjustments of its own tariff rates on U.S. goods. The China-specific rate

was increased from 34 to 84 percent effective April 8, 2025, pursuant to Executive Order 14259*, Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15,509 (Apr. 14, 2025), and then from 84 to 125 percent effective April 10, 2025, pursuant to Executive Order 14266

16. In *AGS Co. Automotive Sol. v. U.S. Customs and Border Protection, et. al.*, No. 25-00255 (Ct. Int'l Trade Dec. 15, 2025), this Court confirmed the authority of this Court to reliquidate entries subject to the IEEPA duties. *Id.* In a related action, the government has represented that it "will not object to the Court reliquidating any of plaintiffs' entries subject to IEEPA duties that are found to be unlawful." *Princess Awesome, LLC v. U.S. Customs and Border Protection, et. al.*, No. 25-078, ECF No. 16 at 12 n.4 (Ct. Int'l Trade May 23, 2025).

17. Beginning on or after February 4, 2025, and continuously through February 2026, Plaintiffs have been importing merchandise into the U.S. Upon importation of this merchandise, Plaintiffs have been required to deposit estimated tariffs, including Trafficking and Reciprocal Tariffs imposed pursuant to the above-referenced executive orders issued under the putative authority of IEEPA. Upon liquidation of entries of such merchandise, Defendant has assessed IEEPA tariffs on Plaintiffs' imported merchandise.

18. On May 28, 2025, a three-judge panel of this Court granted summary judgment for the plaintiffs holding as a matter of law that the imposition of Trafficking Tariffs and Reciprocal Tariffs (collectively "IEEPA Tariffs") on imported merchandise exceeded the President's authority under IEEPA. This Court also permanently enjoined the Government from imposing the IEEPA Tariffs. *V.O.S. Selections, Inc. v. Donald J Trump*, 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025). Enforcement of the injunction was stayed pending the outcome of further judicial proceedings. On August 29, 2025, sitting *en*

*banc*, the United States Court of Appeals for the Federal Circuit ("CAFC") affirmed the decision of this Court, holding as a matter of law that the executive orders imposing Trafficking Tariffs and Reciprocal Tariffs exceeded the authority delegated to the President by IEEPA. The CAFC also affirmed this Court's grant of declaratory relief to the effect that the executive orders imposing Trafficking Tariffs and Reciprocal Tariffs are "invalid as contrary to law." *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

19. In a separate lawsuit filed by a separate group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the United States Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*. The cases were consolidated, with argument on November 5, 2025.

20. On February 20, 2026, the Supreme Court issued its opinion in both cases, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources*, slip op. at 20.

**COUNT I**

21. Plaintiffs incorporate paragraphs 1 through 27 above by reference.

22. In *Learning Resources*, the Supreme Court considered challenges to the President's authority to impose tariffs under IEEPA, and this Court's ruling and the Federal Circuit's affirmance of this Court's opinion in *V.O.S. Selections, Inc. v. Donald J. Trump*, 772 F.

Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025), holding that the President exceeded his authority under IEEPA when he imposed tariffs on imported goods.

23. The Supreme Court held that all tariffs imposed under IEEPA are unlawful. In the Supreme Court's words, "[o]ur task … is to decide only whether the power to 'regulate . . . importation,' as granted to the President in IEEPA, embraces the power to impose tariffs. It does not." *Learning Resources*, slip op. at 16. The Supreme Court thus affirmed the Federal Circuit's decision, which had affirmed this Court's ruling on the merits of the IEEPA tariffs. *Id.* at 21.

24. The Challenged Orders purport to impose duties and modify the HTSUS solely under IEEPA.

25. In its motion to the Federal Circuit in *V.O.S. Selections* to stay the CIT's judgment, CBP confirmed that "[i]f tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any post-judgment interest that accrues." Gov't. Mot. Stay Pending Appeal at 25, *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025).

26. This Court is bound by the *Learning Resources* decision and, as a result of that decision, should order refunds of all IEEPA duties paid by Plaintiffs, with interest as provided by law, including IEEPA tariffs paid on entries which have been liquidated and become final in accordance with 19 U.S.C. § 1514(a).

**<u>DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs respectfully request the Court to enter judgment:

1. Declaring that the imposition of IEEPA Tariffs on merchandise imported by Plaintiffs is contrary to law;

2. Ordering CBP to reliquidate any of Plaintiffs' entries that have been liquidated with assessments of IEEPA Tariffs;

3. Ordering Defendant to refund with interest any and all IEEPA Tariffs collected and/or assessed on merchandise imported by Plaintiffs; and

4. Granting Plaintiffs such other and further relief as the Court deems appropriate.

Respectfully submitted,

/s/ J. Kevin Horgan

J. Kevin Horgan
Merisa A. Horgan
**DEKIEFFER & HORGAN, PLLC**
1015 Fifteenth Street, N.W.
Washington, DC 20005
Tel: (202) 783-6900
email: kevin.horgan@dhlaw.com
Counsel to Titan Wheel Corporation of Illinois, The Carlstar Group, LLC, Titan Tire Corporation; and Marastar, LLC.

Dated: September 4, 2026